```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------X
UNITED STATES OF AMERICA      :

          - v. -             :                    ____

                                               08 Cr. 143 (NRB)
DERICK OPPONG                 :

               Defendant.     :
----------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DERICK OPPONG'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**LEONARD F. JOY, ESQ.**
Federal Defenders of New York
Attorney for Defendant
  **Derick Oppong**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8760

**ROBERT M. BAUM, ESQ.**

    Of Counsel

TO:  MICHAEL J. GARCIA, ESQ.
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007
     Attn:  **AMY LESTER, ESQ.**
            Assistant United States Attorney

1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------X
UNITED STATES OF AMERICA      :

        - v.-                 :

DERICK OPPONG                 :

            Defendant.    :
----------------------------X
```

**08 Cr. 143 (NRB)**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DERICK OPPONG'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

### PRELIMINARY STATEMENT

Defendant Derick Oppong, by undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion to Suppress physical evidence and statements.

Mr. Oppong is charged in a one-count indictment with a violation of Title 18 U.S.C. §922(g)(1), charging him with possession of a firearm after having been previously convicted of a felony punishable by imprisonment for a term exceeding one year. He seeks an order suppressing physical evidence and statements as having been obtained in violation of his constitutional rights pursuant to the Fourth, Fifth, and Sixth Amendments.

### STATEMENT OF FACTS

As set forth in the attached Affirmations of Derick Oppong and defense counsel, Mr. Oppong was arrested on December 23, 2007, after being restrained in the stairwell of his apartment

2

building in Bronx County. <u>See</u> Oppong Affirmation (hereinafter "Oppong Aff."), at ¶¶'s 2 and 7. While walking down the staircase from his fourth floor apartment, he observed several men coming toward him. They were not in uniform and did not identify themselves as police officers. Oppong Aff. ¶ 3. Mr. Oppong became frightened because he had been previously assaulted in his building so he began to run back up the stairs. Oppong Aff. ¶ 4. As he ran, he was not holding anything in his hands and was not holding his waistband. Oppong Aff. ¶ 6.

When he reached the sixth floor landing, one of the men chasing him jumped on his back and threw him to the ground. Oppong Aff. ¶ 5. He was held down on the ground and forcibly searched, at which time a firearm was recovered. Oppong Aff. ¶ 7.

The police were present in the apartment building in response to a complaint they received earlier that evening reporting "disorderly conduct." Compl. ¶ 2(a).

After the recovery of a firearm, Mr. Oppong was formally placed under arrest. Compl. ¶ 2(e). Approximately seven hours later, he was asked to sign a <u>Miranda</u> waiver and did so. After questioning by the police, Mr. Oppong made statements. Compl. ¶ 3. He then advised the police that he was represented by an attorney, and even gave them the attorney's business card containing his name and telephone number. Oppong Aff. ¶8. He advised the police that he did not want to answer any questions

3

without his attorney present. They continued to question him eliciting some answers. Oppong Aff. ¶ 8.

When Mr. Oppong was forcibly stopped, searched and subsequently arrested, he had not been observed to be engaged in the commission of any crime. His flight from the police did not in itself provide probable cause to engage in a subsequent custodial search and arrest. All physical evidence seized as a result of the initial unlawful stop is a result of the initial illegality. All statements made after his detention and arrest are also a result of the initial illegality.  In addition, statements elicited after he advised the police that he was represented by counsel and refused to answer questions without his attorney present, are in violation of his right to counsel under the Fifth Amendment.

### ARGUMENT

**THE WARRANTLESS STOP AND SEIZURE OF DERICK OPPONG FOLLOWING HIS FLIGHT WERE WITHOUT REASONABLE SUSPICION OR PROBABLE CAUSE AND ALL EVIDENCE AND STATEMENTS OBTAINED AS A DIRECT RESULT OF THIS ILLEGALITY MUST BE SUPPRESSED UNDER THE FOURTH AND FIFTH AMENDMENTS AS "FRUIT OF THE POISONOUS TREE"**

The Fourth Amendment proscribes that "[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated ... ."  It is well established that warrantless searches
and seizures are per se unreasonable under the Fourth Amendment
unless they fall within one of several recognized exceptions.
Katz v. United States, 389 U.S. 347, 357 (1967). An investigatory
detention, in other words, a brief seizure by police based upon
"a reasonable suspicion supported by articulable facts" that
criminal activity 'may be afoot,'" is a narrowly drawn exception
to the probable cause requirement of the Fourth Amendment. United
States v. Sokolow, 490 U.S.1, 7 (1989)(quoting Terry v. Ohio, 392
U.S. 1, 30 (1968).

In the instant case, the evidence must be suppressed because
the police, in forcibly detaining Mr. Oppong and searching him,
did so without probable cause. Their actions exceeded the
permissible conduct which would otherwise justify a Terry stop.

The Government will undoubtedly argue that the initial
encounter with police was nothing more than a Terry stop.
However, the police did not engage in a brief detention for
questioning which would otherwise constitute an exception to the
warrant requirement of the Fourth Amendment. The actions of the
police in throwing Mr. Oppong to the ground and holding him there
constitutes not a less-invasive Terry stop, but rather a seizure,
which requires probable cause. Anything that occurred after that
conduct violates the proscriptions of the Fourth Amendment.

An individual can be said to have been seized by the police

if in all the surrounding circumstances, a reasonable person would have believed that he was not free to leave. <u>Michigan v. Chesternut</u>, 486 U.S. 567, 573 (1988)(quoting <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). This inquiry requires an objective assessment of the overall coercive effect of the police conduct. <u>Id</u>. at 573-74.  Examples of circumstances which may indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, ... or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." <u>See</u> <u>Mendenhall</u>, 446 U.S. at 554; <u>United States v. Perea</u>, 986 F.2d 633, 645 (2nd Cir. 1993) <u>United States v. Moreno</u>, 897 F.2d 26, 30, (2nd Cir.), <u>cert</u>. <u>denied</u> 497 U.S. 1009 (1990); <u>United States v. Sugrim</u>, 732 F.2d 25, 28 (2nd Cir. 1984); <u>United States v. Lee</u> , 916 F.2d 814, 819 (2nd Cir. 1990).

Mr. Oppong's flight from the scene under certain circumstances may provide reasonable suspicion to warrant a <u>Terry</u> stop, (<u>see</u> <u>Illinois v. Wardlow</u>  528 U.S. 119, 124-125 [2000]), but when Mr. Oppong was subsequently stopped in the stairwell, he was not subjected to a <u>Terry</u> stop, he was taken into custody, effectively placed under arrest, and subjected to a search. ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.")(<u>Terry v. Ohio</u> 392 U.S. at 16.).

The Second Circuit has recognized that an encounter that began as a permissible <u>Terry</u> stop may ripen into an arrest which requires probable cause, if the police unreasonably used a means of detention that was more intrusive than necessary. <u>United States v. Perea</u>, 986 F.2d 633, 644-45 (2d Cir. 1993). Factors to consider in assessing whether the degree of restraint was too intrusive include the amount of force used, the need for such force, the extent to which the individual's freedom of movement was restrained, and the number of agents involved. <u>Id</u>. at 644-45 (internal citations omitted).

Furthermore, if the only reason to conduct a <u>Terry</u> stop was the flight of Mr. Oppong, that fact standing alone is an insufficient basis for even that minimal intrusion. <u>Illinois v. Wardlow</u>, 528 U.S. at 124. If the reason Mr. Oppong was chased and apprehended was due to his flight, then the police officers initially did not have a reasonable, articulable basis to believe that he had committed or was about to commit a crime. "Reasonable suspicion" that Mr. Oppong had committed or was about to commit a crime requires that a police officer "must be able to articulate something more than inchoate and unparticularized suspicion or 'hunch.'" <u>United States v. Sokolow</u>, 490 U.S. at 7, citing <u>Terry v. Ohio</u>, 392 U.S. at 27.

The exclusionary rule "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the

product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search ..." <u>Murray v. United States</u>, 487 U.S. 533, 536-537 (1988).

It is also axiomatic that the fruit of the poisonous tree, the initial illegality, is subject to the exclusionary rule. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963).  However, under certain circumstances, the suppression of evidence is not mandatory. The Court must determine "whether granting establishment of the primary illegality, the evidence to which instant objection is made, has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." <u>Id</u>. at 488.  Thus, the tainted evidence may be admissible at trial if the government can show that the causal connection between the evidence and the unlawful conduct is "so attenuated as to dissipate the taint." <u>Id</u>. at 487, (quoting <u>Nardone v</u>. <u>United States</u> 308 U.S. 338, 341 [1939]). In finding whether statements are sufficiently attenuated from the unlawful arrest, courts must examine the facts of each case. <u>Brown v. Illinois</u>, 422 U.S. 590 (1975). Relevant factors to consider include "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct." <u>Id</u>. at 603-604. No single factor is sufficient to show attenuation.

Mr. Oppong was initially taken into custody and seized in the stairwell of his building. He was taken into custody and several hours after his arrest, he was given his <u>Miranda</u> warnings, following which a statement was elicited. Mr. Oppong's arrest was a direct result of the initial illegal search and all evidence obtained was a result of the Fourth Amendment violation.

In <u>Brown,</u> the defendant had been illegally arrested and confessed about two hours later. Despite noting that the confession was preceded by <u>Miranda</u> warnings, the Supreme Court found that attenuation was not shown. The issuance of <u>Miranda</u> warnings alone is insufficient to remove the taint of an illegal arrest.

> If Miranda warnings, by themselves, were held to attenuate the taint of the unconstitutional arrest, regardless of how wonton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted.

<u>Id.</u> at 602. Rather, the fact that a voluntary Mirandized statement was made "is merely a `threshold requirement' for Fourth Amendment analysis." <u>Dunaway v. New York</u>, 442 U.S. 200, 217 (1979) (quoting Brown, 442 U.S. at 604.)

In <u>Dunaway</u>, the defendant's arrest was in violation of his Fourth Amendment rights. Despite subsequent <u>Miranda</u> warnings, the Supreme Court suppressed the statement on the grounds that there did not exist any intervening events which broke the connection between the illegal detention and the confession. In <u>Taylor v.</u>

9

<u>Alabama</u>, 457 U.S. 687 (1982), the Supreme Court reaffirmed its holdings in <u>Dunaway</u> and <u>Brown</u>, suppressing a confession given six hours after arrest, finding no intervening circumstances. The subsequent confession, issued after Miranda warnings, similar to the circumstances in <u>Brown</u>, <u>Dunaway</u> and <u>Taylor</u>, did not provide the intervening circumstances necessary to dissipate the taint of the initial illegality. Similarly, Mr. Oppong's statements are not subject to any intervening event which would dissipate the taint from the initial illegality and thus warrant suppression.

### STATEMENTS OBTAINED IN VIOLATION OF DERICK OPPONG'S RIGHT TO COUNSEL MUST BE SUPPRESSED PURSUANT TO THE FIFTH AMENDMENT

Some time after his arrest, Derick Oppong was given his <u>Miranda</u> rights and waived those rights in a written form. He answered some questions but then advised the police questioning him that he wished to speak with an attorney before answering any additional questions. He gave the police the business card of his attorney containing his name and phone number. The attorney was never contacted by the police and Mr. Oppong was advised that he could see his attorney when he was brought to court.

After requesting an attorney, Mr. Oppong was questioned by police. In <u>Miranda v. Arizona</u>, 384 U.S. 436, 474 (1966), the Supreme Court held that police must terminate interrogation of an

accused in custody, if the accused requests the assistance of counsel. Once this right to counsel is invoked, an accused may not be interrogated until counsel is present. <u>Miranda</u> thus provides "the rigid rule that an accused's request for an attorney is <u>per se</u> an invocation of his Fifth Amendment rights, requiring that all interrogation cease. <u>Fare v. Michael C.</u>, 442 U.S. 707, 719 (1979). Further questioning initiated by the police, even where the defendant responds to such questioning, indicating his waiver of the previously invoked right to counsel, is ineffective. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-485, (1981).

Mr. Oppong's request for counsel was clear and unequivocal. It was accompanied by identifying his attorney and providing the police with his name and phone number. Even though he had previously answered questions pursuant to a waiver of <u>Miranda</u>, the invocation of his right to counsel requires the termination of all police initiated questioning and no waiver can be forthcoming without an attorney present. See <u>United States v. Quiroz</u>, 13 F.3d 505 (2d Cir. 1993).

## CONCLUSION

For the foregoing reasons, Derick Oppong respectfully requests that the Court issue an order suppressing the physical evidence and statements illegally obtained in violation of his

Fourth Amendment rights, as a direct result of an arrest and seizure made without probable cause, and pursuant to the Fifth Amendment in violation of his right to counsel; and for such other and further relief as the Court deems just and proper, including the filing of post-hearing memoranda if deemed necessary.


Dated:  New York, New York
        May 5, 2008

                                  Respectfully submitted,

                                  LEONARD F. JOY, ESQ.
                                  Federal Defenders of New York
                            By:   _____
                                  **ROBERT M. BAUM, ESQ.**
                                  Assistant Federal Defender
                                  Attorney for Defendant
                                       **DERICK OPPONG**
                                  52 Duane Street - 10th Floor
                                  New York, New York 10007

TO:     MICHAEL J. GARCIA, ESQ.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York 10007

ATTN:   AMY LESTER, Esq.
        Assistant United States Attorney


12